IN THE UNITED STATES DISTRICT COURT
for the Eastern District of Maine
Civil Division

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2021 MAR 29 P 12: 45

DEPUTY CLERK

HERB CHADBBOURNE

:

Petitioner,,

v.,

BRIAN LONGSTAFF, in his personal & professional capacities as zoning administrator for the municipality of Scarborough, ME.,

and,

THE MUNICIPALITY OF SCARBOROUGH, MAINE plus DOES 1-5 inclusive

Respondents,

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF TO ESTOP:

a) RESPONDENT CODE ENFORCEMENT OFFICER FROM ENTERING PETITIONER'S LAND WITHOUT AN ADMINISTRATIVE WARRANT, [ contrary to 12 MRSA § 10656 ] and from,

b) DEPRIVATION OF PETITIONER'S LEGAL RIGHTS UNDER COLOR OF LAW [ contrary to 18 USC § 242 and 42 USC § 1983, et seq ]

JURY TRIAL DEMANDED

BASIS FOR JURISDICTION & VENUE

1. The District Court for the United States in the Eastern District of Maine has both personal and subject matter jurisdiction over the parties and real property in this matter pursuant to Title 28 USC § 1311, 42 U.S.C § 1983, and the Civil Rights section of Article III of the United States Constitution.[ in which a commentary by Judge Joseph Story describes courts which are convened under the Common Law. ]

2. As is specifically stated under 42 U.S.C. § 1983,

> "Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State or Territory or District of Columbia, subjects or causes to subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured, in an action at law, suit in equity or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was not available or declaratory relief was unavailable."

3. Essentially then, it is under 42 U.S.C. § 1983, that an appropriately aggrieved plaintiff may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and/or by any Federal laws." [ see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), ]

4. Moreover, under 18 USC §§ 242, 14141 Federal law makes it a crime…"for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive, or cause to be deprived, from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S."

5. Specifically, this court's personal jurisdiction in this matter is proper because: a) all of the defendants either lived or worked within Cumberland County, in the State of Maine, at all relevant times wherein this controversy arose and because: b) the individuals named herein have either directly, or indirectly through collusion under the color of law, intentionally committed a Federal crime in their capacities as agents of the public municipality of Scarborough, Maine by oppressively and intentionally engaging in Honest Services Fraud; as is statutorily proscribed in 18 USC §1346, et seq. [ a/k/a The Public Corruption Act ].

6. Additionally, this venerable court has subject matter jurisdiction over this case, because it arises under the laws and Constitution of the State of Maine, and under the Federally preemptive

laws and Constitution of the United States of America, with respect to which the State of Maine has powers of enforcement under the Tenth Amendment to the United States Constitution.

7. Lastly, the Petitioner herein has judicial standing in this controversy because: a) the Petitioner may imminently suffer a significant, financial injury-in-fact, if the defendant code enforcement official is permitted to invade and inspect the Petitioner's property without first acquiring an administrative warrant [ as is required by law, if requested, pursuant to the Maine Municipal Code Enforcement Officers Training Manual on p. b) and because this issue is ripe for judicial review and it is not moot, because the problem addressed herein is part of an on-going, thirteen-year pattern of fraudulent and official oppression of the Plaintiff by a few collusive town officials with associates who have criminal records, thereby making it ripe for judicial review, and because c) the Plaintiff's injury-in-fact herein is capable of being judicially redressed by this venerable Court.

APPLICABLE LAW:

8. Under Maine law in pertinent part, as is statutorily delineated in 12 MRSA § 10657 regarding **Civil Trespass**:

"1. Prohibition. While engaging in any activity regulated under this Part, **a person, knowing that the person is not licensed or privileged to do so, may not:**

**A. Enter, or cause a projectile to enter, any place from which that person may lawfully be excluded and that is posted in accordance with Title 17-A, section 402, subsection 4** or in a manner reasonably likely to come to the attention of intruders or that is fenced or otherwise enclosed in a manner designed to exclude intruders; or [PL 2007, c. 334, §1 (NEW).]

B. Enter or remain in or cause a projectile to enter or remain in any place in defiance of a lawful order not to enter or an order to vacate that was personally communicated to that person by the owner of the place or another authorized person. [PL 2007, c. 334, §1 (NEW).] [PL 2007, c. 334, §1 (NEW).]

2. Civil penalties. The following penalties apply to violations of this section.
A. A person who violates this section commits a civil violation for which a fine of not less than $100 and not more than $500 may be adjudged." [PL 2007, c. 334, §1 (NEW).]

9. In order to obtain injunctive relief, the Maine courts have long stated that before granting a preliminary or permanent injunction, the court must find that the following four criteria are met:

(1) that the plaintiff will suffer irreparable injury if the injunction is not granted,

(2) that such irreparable injury outweighs any harm, which granting the injunctive relief would inflict on the defendant,

(3) that plaintiff has exhibited a likelihood of success on the merits [ at most, a substantial possibility is required..( see the judicial opinion in Ingraham v University of Maine at Orono, 441 A2d 691, ME 1982 )], and,

(4) that the public interest will not be adversely affected by granting the injunction. [ see again Ingraham v University of Maine at Orono, 441 A.2d. 691, 693 ( ME. 1982) ]

FACTUAL SUMMARY

9. The petitioner landowner in Scarborough is a 65-yr old, 50% disabled combat veteran who: a) honorably served his country during the Persian Gulf War in 1991, b) has a visible facial disfigurement via residual paralysis in the left side of his face from perhaps his exposure to the chemical warfare agents used in the Persian Gulf War in 1991, and who c) owns approx. 5.45 acres of forested land at 96-C Broadturn Rd. in Scarborough, Maine.

10. The petitioner's neighbors at both 96 Broadturn Road and at 98 Broadturn Road, both appear to be friends who moved to their two current locations on either side of the plaintiff's deeded right of way from Florida in 2013 and in 2019 respectively, [ pursuant to the Scarborough tax assessor's records ] perhaps to distance themselves from their moderately lengthy criminal records in Florida. [ see EXHIBITS 1 and 2 ]

11. As might be consistent with their prior criminal records from Florida, both neighbors have falsely accused the petitioner to the Scarborough Police and code enforcement authorities on previous occasions. [ For example, Mr Roberts' Civil Harassment Notice was wrongfully issued to the plaintiff in Nov. of 2015, approx., on behalf of himself and his wife; Doreen, [ whom the petitioner has never seen, let alone harassed ] without meeting any burden of proof whatsoever. ] Perhaps this is wrongfully permitted under Maine statute, because the falsely accused Plaintiff was forced to come and go from his own property for an entire year, but only with an accompanying witness. Shortly after the petitioner was impermissibly issued this Civil Harassment Notice, the petitioner's boat was vandalized via several knife or razor slashes in its seats, as was reported to the local Police without result, b) tools which the petitioner had stored on his land went permanently missing and c) the tiedown lines on the petitioner's GP-medium, military surplus tent all "cut themselves" with a sharp instrument on several occasions after a mild rain storm or wind storm, resulting in the tent's complete collapse and necessitated re-assembly.

12. Despite the petitioner's best and most diligent efforts to keep himself and his temporary guest safely away from the false accusations of his neighbors with criminal records, and away from several tacitly complicit town authorities, on October 25th, 2020, the petitioner's temporary guest received a surprising Sunday afternoon visit from Scarborough Patrol Officer; Shawn Anastasoff,, [ see the petitioner's letter to Scarborough attorney; Phil Saucier, to this effect, which is herein attached as Exhibit 3 ]. Essentially, Officer Anastasoff had: a) apparently responded to a false report from a neighbor calling herself: "Carla Jean Smith" [ formerly Stephanie Obier; inmate 317481 with the Florida Dept Corrections? ] after Officer Anastasoff had: b) illegally trespassed past four separately placed "No Trespassing" signs along the petitioner's fire access trail and past one partially open gate on petitioner's privately posted right of way c) in response to a civil matter

d) without a warrant of any kind. [ Apparently a false report from a woman with a criminal record and a malicious motive was sufficient to prompt Officer Anastasoff 's "rapid response" to such an "emergency". ].

13. Shortly after Officer Anastassoff's illegal visit, .When the petitioner recently checked four of the motion-activated game cameras on his property, he discovered that the memory cards in all four of them ( there are others ) had been removed. [ Nevertheless, **the petitioner possesses a game camera photo of the 24-yr old son of thrice-convicted Florida felon and neighbor: David A Roberts, leaving the Petitioner's closed gate on Petitioner's posted right of way while riding a motor-assisted bicycle with a tool bag attached to its rear wheel** ].[ EXHIBIT 4 ]

14. **Petitioner also possesses a 40-minute, covertly acquired, digital recording** from his forced face-to-face confrontation on the Plaintiff's own land with a widely hated, former Police Officer in Scarborough whose brother is allegedly one of this area's largest land developers. [ EXHIBIT 5 will contain both this recording and its printed transcript and will be submitted into evidence shortly before the trial of this matter ].

15. Evidence of collusion in their criminal harassment of the petitioner? While Mr. Chamberlain was verbally bullying the petitioner, the thrice-convicted Florida felon next door; namely Mr. Roberts, was looking on from his side of their commonly shared boundary line. In the recording, Matthew Chamberlain loudly informed the petitioner that: a) he is no one important in town b) that Mr. Chamberlain's brother is the largest and most important developer that the town has , and that c) the petitioner...."better wake up and realize that we will never let you do anything with your property, so you'd better sell it to us cheaply, because you never paid anything for it to begin with".

16. Although the petitioner doesn't know if there's an affiliation between the thrice-convicted Florida felon next door; namely between David A Roberts and the former head of the American Legion in Scarborough of the same last name; the petitioner has been told that several of Scarborough's Police Officers are known to frequent this legion and to joke about who they're going to target next. In fact, the Police Dept's former Harbor Master; David Corbeau apparently served alcohol there on weekends, as reported by at least one business owner, who claims that Mr. Corbeau was accustomed to coming into her pub and harassing her waitresses in an inebriated manner while in uniform. In keeping with this pattern, the petitioner has recently been followed again on several occasions by a Scarborough Police cruiser for no apparent reason.

17. Currently, and in the case at bench, the respondent code enforcement officer has allegedly,

> "...received several complaints alleging that a variety of unpermitted land use activities, including the use of a[n] recreational vehicle./ camping trailer as a dwelling, are occurring in the subject property. ". [ see EXHIBIT 5 ]

Legal Issue: Since the Petitioner's code-permitted shed, boat, camper, et al are situated near the rear of his evergreen forest and are well beyond the plain view of any observer who is NOT illegally trespassing, would this narrow exception to the Fruit of the Poisonous Tree Doctrine for an illegal trespasser, be appropriate to judicially apply when there is such a problematic legal history re the Respondent's town officials and such a great disparity of power between the two parties herein?

18. <u>COULD MONEY BE THE MOTIVE OF THE PETITIONER'S FALSE ACCUSERS?</u>: SINCE THERE HAVE BEEN FALSE REPORTS ABOUT THE PLAINTIFF PREVIOUSLY, TO THE LOCAL POLICE FROM HIS TWO ADJOINING NEIGHBORS WITH CRIMINAL RECORDS, AND PERHAPS FROM TWO OTHER INDIVIDUALS WHO HAVE CRIMINAL RECORDS [ which weren't known to the Plaintiff when he first met them ] COULD A FEW OF THESE ACCUSERS HAVE A MALICIOUS MOTIVE TO ACQUIRE THE PLAINTIFF'S LAND CHEAPLY AT AUCTION? [ after burdening it with undeserved code encumbrances ]

19. Unfortunately, this type of criminal harassment and abuse of Maine's legal process is entirely consistent with the previous actions perpetrated on the plaintiff by his transplanted neighbors from Florida with criminal records. Specifically, when David A. Roberts at 98 Broadturn Rd first acquired the real property of deceased widow; Margaret Flaggerty's home on 9/27/2013 ( which he titled to his wife: Doreen, A Roberts, who periodically inhabits their other house at 249 Broadturn Rd , thereby not jeopardizing Mr. Roberts' full receipt of disability compensation by having assets in excess of $3,000 dollars for a married couple? ) the petitioner was forced to calmly asked Mr. Roberts on three separate occasions , immediately after Mr Roberts had acquired the widow's property next door, to return to his own side of their commonly shared boundary line and to cease his trespassing, which Mr Roberts did quite grudgingly and in the presence of one or two of his trespassing friends.

20. During his third trespass, however, Mr Roberts aggressively informed the Petitioner and his partner; Patricia Crowell, in a physically threatening manner that whether the petitioner wished to sell his land or not, Mr Roberts would definitely acquire the petitioner's land cheaply, no matter what the plaintiff tried to do to prevent it.

21. Thereafter, the petitioner and his female partner began to privately consider Mr Roberts to be a relentlessly aggressive and previously convicted social predator to be avoided at all costs. This impression was subsequently confirmed by Zachary Jones, whose father owns the land on the western side of Mr. Roberts' cheaply acquired property and to whom Mr. Jones tersely referred as being a "land scammer".

22. IN THE MATTER AT BENCH, it was on February 28th, 2021, that the Plaintiff initially received notice from the Municipality of Scarborough's code enforcement office that,..." *"...several*

*complaints alleging that a variety of unpermitted land use activities, including the use of an recreational vehicle/camping trailer as a dwelling, are occurring on the subject property".* [ see EXHIBIT 6 ]

23. In response, the plaintiff sent a typewritten letter to Mr. Longstaff, along with a courtesy copy to Scarborough attorney; Phil Saucier, Esq., describing some of the reasons why complaints from his neighbors with criminal records might possibly have a criminal motive which might not meet the requirement for establishing probable cause sufficient to acquire an administrative warrant . [ see EXHIBIT 7 ] and asking for further clarification as to what possible code violations the plaintiff may have unknowingly committed.

LEGAL ARGUMENT

22. **IN ACCORDANCE WITH THE ETHICAL DICTATES OF FAIRNESS, EQUITY AND OF PUBLIC POLICY THEN, WOULD IT NOT BE LEGALLY PERMISSIBLE FOR THIS VENERABLE COURT TO REQUIRE THE RESPONDENT CODE ENFORCEMENT OFFICER TO ABIDE BY THE SAME RULES OF CIVIL AND MUNICIPAL PROCEDURE WHICH GOVERN THE OTHER CODE ENFORCEMENT OFFICERS IN THE STATE OF MAINE, BY ORDERING MR LONGSTAFF TO ACQUIRE AN ADMINISTRATIVE WARRANT BEFORE HE ENTERS THE PETITIONER'S PROPERTY?** [ see page 85 of the manual used by the State of Maine to train its code enforcement officers, namely the manual published by the Dept of Economic and Community Development's Office of Community Development which is entitled: "CODE ENFORCEMENT OFFICER TRAINING/CERTIFICATION PROGRAM LEGAL ISSUES" [ June 2017 edition ] wherein it specifically states that,

> "Although there are a few exceptions to the requirement that a warrant be obtained prior to an inspection where the activity involved is a business which has a long history of close government supervision and control (e.g., firearms, liquor), those exceptions generally will not come into play in connection with local code enforcement. Marshall v. Barlow's Inc.,436 U.S. 307 (1987); Camara v. Municipal Court of the City and County of San Francisco, 387 U.S.523 (1967); Air Pollution

Variance Board v. Western Alfalfa Corp., 416 U.S. 861(1974); see Oliver v. United States, 64 S.Ct. 1735 (1984);"

LEGAL ARGUMENT

23. In the case at bench, this venerable court should grant the Petitioner's request for a preliminary injunction because each element of the aforementioned legal standard has been met, as is proven by the following facts:

A. Irreparable harm to the Petitioner and landowner: Although the petitioner is unaware of any code violations on his property, the financial damages incurred by the petitioner from a premature and warrantless inspection of his posted property could potentially become substantial, if conducted by a hostile code enforcement officer with an improper motive and could well be more than the plaintiff can possibly ever pay, thereby resulting in the financial forfeiture of the plaintiff's unique property, which provides a home to several, rare forms of animal life. [ At the very least, the petitioner is attempting to hire a code enforcement officer from a nearby Maine town to be present when Mr. Longstaff enters his land to "inspect".

i) [ Petitioner's game cameras have recorded the presence of : i) **a Canadian Lynx,** ( see EXHIBIT 8 ) ii) a coyote, iii ) a fox, iv) several female deer and their fawns and a v) a colossally huge moose seen by several witnesses, to include selectman Dwayne Woodsome, until several rifle shots at approx 3:20 am on a Sunday morning [ as reported to the Cumberland County Sheriff's Office ] from the direction of the Petitioner's thrice-convicted felon of a neighbor: David Alan Roberts, seemed to end the Moose's periodic appearances during the early Fall of 2018.

**NOTE: On March 24, 2000, the United States Fish and Wildlife Service (USFWS) designated the Canadian lynx as a threatened species under the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq. 65 Fed. Reg. 16052 (March 24, 2000) ( as is codified at 50 C.F.R. § 17.11). Since 1967, and**

**substantially before this designation, but consistent with it, the state of Maine has made it illegal to intentionally hunt or trap lynx. [ see** Animal Welfare Institute v. Martin, 668 F. Supp. 2d 254 (D. Me. 2009) ] **Perhaps the preservation logic inherent in this federal law also include a prohibition against a code enforcement officer disturbing the lynx's habitat, absent an administrative warrant.**

24. In further support of this petition, the aforementioned training manual for Maine's code enforcement officers states quite clearly in the second paragraph on page 85 therein, that:

> "The 4th Amendment to the U.S. Constitution prohibits "unreasonable" searches of private property, whether the property is occupied by a residence or a business. Whether a search is "unreasonable" hinges largely on whether the area involved in the search is one in which the owner/occupant has a "reasonable expectation of privacy." Generally, an owner/occupant will be considered as having a reasonable expectation of privacy in the use of a building and the immediately adjoining land (sometimes referred to as "the curtilage"), but not in undeveloped fields or woodlands ("open fields"). **This means that before entering a building or the "curtilage" to conduct an inspection and determine whether an ordinance violation exists, the code enforcement officer must either: (1) obtain permission from the landowner or other person having legal authority to grant access to the property; or (2) obtain an administrative warrant from the District Court under Rule 80E. (See Section C of this chapter). This is true even if the building is a seasonal residence or only used occasionally, like a hunting cabin. 68 Am. Jur.2d §§37, 38."**

25. B: that such irreparable injury outweighs any harm, which granting the injunctive relief would inflict on the respondent,

a) Re: the burden on the respondent: The legal propriety of requiring the respondent code enforcement officer to follow the legal procedure which is clearly delineated in the Maine Municipal Code Enforcement Officers' Training Manual [ which directs him to acquire an administrative warrant from the District Court under Rule 80 E ] might be further supported by the Equal Protection clause of the 14th Amendment. .

b) Re: irreparable injury to the petitioner: The Maine Supreme Judicial Court has previously ruled that, ("“Irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.' ( see Bruns v. Mayhew, 931 F. Supp. 2d 260, 273-74 (D. Me. 2013) see also: Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir.2000) ( quoting Ross–Simons of

Warwick, Inc., v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir.1996)). To satisfy this factor, the Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction", i.e., before a decision on the merits can be rendered. Winter v. NRDC, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). See also: A.M. v. Cape Elizabeth Sch. Dist., 422 F. Supp. 3d 353, 367 (D. Me. 2019).

c) Additionally, the United States Supreme Court has ruled that, "[t]he loss of First Amendment freedoms, [ such as the petitioner's right to travel freely on his own land, potentially ] for even minimal periods of time, unquestionably constitutes irreparable injury." See Elrod v. Burns , 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). ") [ see the likelihood of irreparable harm element satisfied in City of Los Angeles v. Lyons, 461 U.S. 95 (1983)

d) Here, while the petitioner is still paying for the medial bills which were incurred from the death of his 21-year life partner caused by cancer on Dec 14th, 2018, any fines whatsoever which are levied on the poorly informed petitioner [ who has previously, but unsuccessfully, requested clarification as to what codes he may have violated ] might be clearly beyond the petitioner's financial resources and might cause the petitioner to irreversibly and permanently lose his property. Currently, the petitioner is hoping to eventually acquire a habitable structure on his land with an occupancy permit from the respondent town, and is working toward this objective, but adding another veteran to the list of approx 400 homeless veterans who were sleeping under bridges when Maine's former Governor; Paul LePage left office would be against public policy.

26. The petitioner's likelihood of success on the merits: ]

a) Insisting on conventional channels of legal redress, such as requiring the respondent code enforcement officer to first acquire an administrative warrant prior to predatorily "inspecting" the property of his disliked petitioner, is supported by the aforementioned Maine Municipal Code Enforcement Officers' Training Manual mentions on p. 85, approx. wherein it clearly states that,

> "Although there are a few exceptions to the requirement that a warrant be obtained prior to an inspection where the activity involved is a business which has a long history of close government supervision and control (e.g., firearms, liquor), those exceptions generally will not come into play in connection with local code

enforcement. Marshall v. Barlow's Inc.,436 U.S. 307 (1987); Camara v. Municipal Court of the City and County of San Francisco, 387 U.S.523 (1967); Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861(1974); see Oliver v. United States, 64 S.Ct. 1735 (1984);"

b) Conversely, judicially permitting the respondent code enforcement officer to arbitrarily enter and "inspect" the Petitioner's property on an evidentiary fishing expedition in an unsupervised manner and in response to a false report from someone with a criminal record and a questionable motive would either circumvent or challenge the Court's jurisdiction and would fail to protect the petitioner from a plethora of, "vexatious or harassing litigation" ( see *Golden Rule Ins co v Harper,* 925 SW2d 649, 651 (Tex 1996 ) which will probably follow this matter. Specifically, it would permit the respondent code officer to further harass the petitioner under the color of law without first acquiring an administrative warrant justified by probable cause, as determined by a proper court of law. Lastly, the petitioner intends to have a non-hostile, and perhaps more objectively reasonable, code enforcement officer from a neighboring town be present when the respondent code enforcement officer "inspects" under the color of law.

27. Balancing the equities and hardships favors granting the petitioner_a preliminary injunction in this matter until the respondent code enforcement officer can acquire an administrative warrant from a Court of law, because the delay caused by following Maine's legal procedures will not appreciably change the conditions which currently exist on the petitioner's property .

a) Specifically, the immediate harm to the petitioner via arbitrarily assessed fines rendered in an unsupervised manner for code violations which the petitioner doesn't understand and which the respondent code enforcement officer has apparently declined to proactively clarify, can potentially cause the petitioner to forfeit ownership of his property and in turn, cause an endangered Canadian lynx to lose its natural habitat, along with the same loss to other animals. [ see Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008). ]

28. Public policy: Granting a preliminary injunction to estop the respondent code enforcement officer from inspecting without an administrative warrant requiring probable cause, is clearly consistent with the Maine Municipal Code Enforcement Officer's Training Manual, as is therein delineated at, or near, page 85 [ this excerpt is referenced supra and reflects Maine's current public policy ].

29. Maine's courts enforce the laws which are enacted by Maine's legislature, and it is not the purview of a code enforcement officer to usurp the authority of either. Specifically, a preliminary injunction from this venerable court will judicially prohibit the officer's unwarranted search of the petitioner's property in contravention of the aforementioned code enforcement training manual and in contravention of the 4th Amendment, as applied to the various and individual states through the fourteenth amendment. Rather than arbitrarily deciding when, where and against whom he chooses to inspect, [ an approach which has historically placed other Scarborough property owners in abject fear of his disdain and selective enforcement ] a favorable decision by this venerable court in this matter will not only inspire respect for the Maine Judiciary by certain members of the Maine public who are quietly watching this matter, but it may also remind the respondent officer that the unfortunate ambiguity in many of Scarborough's municipal codes is not a generalized opportunity to selectively harass members of the tax paying community whom he personally dislikes.

## CONCLUSION

It may well be that when the full facts which have precipitated this motion over the past 13 years are viewed more closely by this venerable court in the soon-coming complaint of JOHN DOE v PAUL LESPERANCE, BRIAN LONGSTAFF & THE MUNICIPALITY OF SCARBOROUGH, ME., the respondent code enforcement officer's historical abuse of Maine's legal process toward the 50%

disabled petitioner over the past 13 years, constitutes: 1) Official oppression [ contrary to 17-A MRSA §608 ] and has additionally constituted 2) a deprivation of the petitioner's rights under the color of law [ contrary to 18 USC § 242 ]. It is the petitioner's future intent to establish in this upcoming action that harassment under the color of law is an unmistakable betrayal of the public's trust and it is a clear breach of the defendants' fiduciary duty to the Plaintiff; as a Scarborough landowner and tax payer.

WHEREFORE: the petitioner respectfully moves this venerable court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and pursuant to the other aforementioned laws, for a preliminary injunction which will require the respondent code enforcement officer to acquire an administrative warrant before entering the petitioner's privately posted property.

Respectfully submitted,

Herbert O Chadbourne; petitioner
PO Box 355, Scarborough, Maine 04070

3/29/2021
date: March 29th, 2021

**AFFIRMATION**

I, HERBERT O CHADBOURNE, do hereby affirm and attest under the penalty of perjury, according to the laws of Maine and according to the Federal Rules of Procedure, that the foregoing statements are true and correct to the best of our knowledge and belief. I further affirm under Rule 11 of the Federal Rules of Civil Procedure, by signing below, that to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of upcoming litigation; (2) is supported by existing law or by a non-frivolous argument for extending or modifying the reach of the respondent municipality's code, (3) that the factual contentions herein have evidentiary support or, if specifically identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery; and that (4) this complaint otherwise complies with the requirements of Rule 11.

3/29/2021

HERBERT O CHADBOURNE, petitioner
PO Box 355, Scarborough, Maine 04070

date: March 29th, 2021

AFFIRMATION OF SERVICE

I, HERBERT O CHADBOURNE, hereby attest and affirm under the penalty of perjury that this same day, I have mailed a certified copy of this motion to the Municipality of Scarborough's designated attorney; namely to Zachary Brandwein, Esq, at the law firm of Bernstein, Shur, Sawyer & Nelson, PA at 100 Middle Street / PO Box 9729 in Portland, Maine 04101.

3/29/2021

HERBERT O CHADBOURNE, petitioner
PO Box 355, Scarborough, Maine 04070

date: March 29th, 2021

**NOTARY PUBLIC**

Sworn, and subscribed to me on this 29th day of ~~June 2018~~ March 2021, to which I have witnessed by hand and seal of office:

~~Town of Saco~~, Maine Notary Public
South Portland

PATRICK J. QUINN JR.
Notary Public, Maine
My Commission Expires
June 10, 2025