UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| *HERB CHADBOURNE,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | ) No. 2:21-cv-00085-NT |
| | ) |
| *BRIAN LONGSTAFF et al.,* | ) |
| | ) |
| *Defendants* | ) |

### RECOMMENDED DISMISSAL OF THE CASE
### FOLLOWING REVIEW PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

*Pro se* plaintiff Herb Chadbourne sues Scarborough, Maine, Zoning Administrator Brian Longstaff, the Town of Scarborough, and unknown defendants Does 1-5, seeking to enjoin Longstaff from entering his property in Scarborough without an administrative warrant. *See* Petition for Declaratory and Injunctive Relief . . . ("Complaint") (ECF No. 1) ¶¶ 22-29. The plaintiff filed a motion to proceed *in forma pauperis* (IFP), which I granted. *See* ECF Nos. 9-10. I have now completed the screening required when a *pro se* plaintiff seeks to proceed IFP, *see* 28 U.S.C. § 1915(e)(2)(B), and recommend that the court dismiss his complaint without prejudice for failure to demonstrate a sufficiently concrete injury to implicate this court's power to adjudicate his case.

### I.  Applicable Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding *in forma pauperis*, however, "the court shall dismiss the case at any time if the court determines[,]" *inter alia*, that the action is "frivolous or malicious" or "fails to state a

1

claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

"Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. United States Dist. Court S.D. Iowa*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").[1]

The bases for dismissal pursuant to Section 1915(e)(2)(B) include lack of subject matter jurisdiction, without which a court is powerless to act.  *See, e.g., Gates v. Amundsen*, Docket No. 2:20-cv-00487-NT, 2021 WL 139477, at *1 (D. Me. Jan. 14, 2021) (affirming recommended decision of Magistrate Judge Nivison on section 1915(e)(2)(B) screening to dismiss case for failure to state a claim within court's subject matter jurisdiction); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

As relevant here, a plaintiff must demonstrate that he has standing to sue, and that his claim is ripe, to confer jurisdiction on the court to adjudicate his claim.  *See, e.g., Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017).  To make that determination at the pleading stage, the court borrows the analytical rubric used to determine whether a plaintiff has stated a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) ("Although review of a Rule 12(b)(6) dismissal for failure to state a claim and review to ensure the existing of standing are conceptually distinct, the same basic principles apply in both situations. . . . Just as the plaintiff bears the burden of plausibly alleging a viable cause of

---

[1] Section 1915(d) was subsequently renumbered to section 1915(e).

action, so too the plaintiff bears the burden of pleading facts necessary to demonstrate standing. . . . [W]e – like the majority of our sister circuits – have applied the plausibility standard applicable under Rule 12(b)(6) to standing determinations at the pleading stage.") (citations omitted); *In re Birriel Rivera*, 610 B.R. 174, 180 (Bankr. D.P.R. Oct. 24, 2019) (the pleading standard for demonstrating subject matter jurisdiction, including whether a claim is ripe, "is the same as applies under Rule 12(b)(6) – that is, the plaintiff[] must state a claim to relief that is plausible on its face") (citations and internal quotation marks omitted).

Pursuant to the Rule 12(b)(6) analytical rubric, when considering whether a complaint states a claim for which relief may be granted, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Yet, the court does not "draw unreasonable inferences or credit bald assertions or empty conclusions." *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (citation and internal punctuation omitted). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A suit is properly dismissed if the complaint does not set forth factual allegations, <u>either direct or inferential</u>, respecting each material element necessary to sustain recovery under some actionable legal theory." *Guilfoile*, 913 F.3d at 186 (citation and internal quotation marks omitted) (emphasis in original).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough

3

for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In this regard, a *pro se* plaintiff's complaint must be read liberally.  *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002).

## II. Factual Background

The plaintiff's complaint, read liberally, alleges the following relevant to this review:

The plaintiff, a 65-year-old disabled combat veteran, owns approximately 5.45 acres of forested land at 96-C Broadturn Road in Scarborough, Maine.  Complaint ¶ 9.  The plaintiff's neighbors, who reside at 96 Broadturn Road and 98 Broadturn Road, have made false accusations against him to Scarborough police and code enforcement authorities.  *Id*. ¶¶ 10-13.  For example, the plaintiff's neighbor David A. Roberts, on behalf of himself and his wife Doreen, falsely accused the plaintiff of harassment, leading to the issuance of a Civil Harassment Notice to the plaintiff in November 2015.  *Id*. ¶¶ 11, 13.  Shortly afterward, the plaintiff's boat was vandalized, tools stored on his land went missing, and the tie-down lines on his tent were cut.  *Id*. ¶ 11.  The plaintiff reported the vandalism of his boat to the local police "without result[.]"  *Id*.

Roberts has trespassed on the plaintiff's property on three occasions since moving next door in 2013.  *Id*. ¶ 19.  Each time, the plaintiff asked him to return to his own side of their common boundary line.  *Id*.  During the third trespass, Roberts aggressively informed the plaintiff and the plaintiff's partner, Patricia Crowell, that whether the plaintiff wished to sell his land or not, Roberts would acquire it cheaply no matter what the plaintiff tried to do to prevent it.  *Id*. ¶ 20.

On October 25, 2020, Scarborough patrol officer Shawn Anastasoff trespassed on the plaintiff's property without a warrant, despite the posting of No Trespassing signs, in an apparent response to a false report from the plaintiff's neighbor "Carla Jean Smith," formerly Stephanie

4

Obier. *Id*. ¶ 12.  The plaintiff wrote a letter that day to Phil Saucier, Esq., attorney for the Town of Scarborough, complaining that Anastasoff had trespassed on his land without a warrant in response to what the plaintiff suspected was a complaint from "Smith," formerly Obier, who was friendly with Roberts. *Id*.; Exh. 3 (ECF No. 1-4) thereto.  The plaintiff thanked Attorney Saucier "in advance for proactively curtailing the occasionally impulsive actions of your client's Police Officers," which would obviate the need for the plaintiff to file suit.  Exh. 3.

Shortly after the plaintiff's encounter with Anastasoff, the plaintiff discovered that the memory cards in all four motion-activated game cameras on his property had been removed. Complaint ¶ 13.  He nevertheless possesses a game camera photo of Roberts' 24-year-old son leaving the plaintiff's closed gate on the plaintiff's posted right-of-way while riding a motor-assisted bicycle with a tool bag attached to its rear wheel. *Id*.; Exh. 4 (ECF No. 1-5) thereto.

The plaintiff also has a digital recording of a face-to-face confrontation on his own land with former Scarborough police officer Matthew Chamberlain, who told him, as Roberts looked on from his adjoining property, that he (the plaintiff) was "no one important in town[,]" that Chamberlain's brother was one of the largest and most important developers in town, and that the plaintiff "better wake up and realize that we will never let you do anything with your property, so you'd better sell it to us cheaply, because you never paid anything for it to begin with."  *Id*. ¶¶ 14-15.  The plaintiff recently has been followed on several occasions by a Scarborough police cruiser for no apparent reason.  *Id*. ¶ 16.

The plaintiff has conducted research indicating that both Roberts and "Smith," formerly Obier, who moved to Maine from Florida, have Florida criminal records.  *Id*. ¶ 10; Exhs. 1 (ECF No. 1-2), 2 (ECF No. 1-3) thereto.  He suspects that their false reports against him stem from a malicious motive to acquire his land cheaply.  Complaint ¶ 18.

On February 28, 2021, the plaintiff received a letter dated February 1, 2021, from Longstaff, in his capacity as Zoning Administrator, Town of Scarborough, addressed to the plaintiff and another individual, Paul Curtis Selzer, on the subject of a "[r]equest for inspection to resolve complaint, Broadturn Road, Map R045003C." *Id*. ¶ 22[a]; Exh. 6 (ECF No. 1-6) thereto.[2] The letter states, in its entirety:

> Dear Sirs:
>
> This department has received <u>several complaints</u> alleging that a variety of unpermitted land use activities, including the use of a[] recreational vehicle/camping trailer as a dwelling, are occurring on the subject property.
>
> In order to resolve these complaints, the Town requests your permission to come to the property to review these complaints with you and if the violations do not exist, close out the complaints. If violations are found, the Town would like to work with you on a plan for corrective action on a reasonable timetable.
>
> As always, the Town seeks voluntary compliance from a landowner to resolve any issues. We respectfully ask that you contact this office within 7 days of receipt of this letter to schedule a site visit.
>
> . . . Thank you for your prompt attention to this matter.[3]

Exh. 6 (emphasis in original).

In response, the plaintiff sent a typewritten letter to Longstaff, with a courtesy copy to Attorney Saucier, describing reasons why complaints from his neighbors with criminal records who might possibly have a criminal motive might not meet the requirement for establishing probable cause to acquire an administrative warrant. Complaint ¶ 23[a].[4] In his letter, the plaintiff

---

[2] The complaint contains two paragraphs 22 and two paragraphs 23. *See* Complaint at 8-10. I have referred to the first set as paragraphs 22[a] and 23[a], and the second set as paragraphs 22[b] and 23[b].
[3] I have omitted verbiage from the final sentence of Longstaff's letter that appears to have been included in error, stating, "If you wish to dispute anything in this Notice of Violation and Order, you . . . ." Exh. 6.
[4] The plaintiff purports to append a copy of his most recent letter to Attorney Saucier as Exhibit 7 to his complaint; however, he appends a second copy of his letter to Attorney Saucier dated October 25, 2020. *See* Exh. 7 (ECF No. 1-7) to Complaint. The omission is not outcome-determinative. The plaintiff summarized the contents of the more recent letter in his complaint, and I have reflected that summary in my recitation of his allegations.

also sought further clarification as to what possible code violations he might have unknowingly committed. *Id*. Longstaff has not clarified the nature of those violations. *Id*. ¶¶ 25(d), 27(a).

### III.    Discussion

The plaintiff seeks a preliminary injunction barring Longstaff from entering his property without an administrative warrant. *See id.* ¶¶ 22[b], 23[b]. Yet, his complaint, even liberally read, seeks redress for a speculative harm, undermining the court's power to adjudicate it.

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes"; nor do they "possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, _ S. Ct. _, 2021 WL 2599472, at *6 (U.S. June 25, 2021). "The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting U.S. Const. art. III, § 2). "That limitation on the judicial [p]ower of the United States is fundamental to the federal judiciary's role within our constitutional separation of powers." *Reddy*, 845 F.3d at 499 (citation and internal quotation marks omitted). "Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III." *Id*. "As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] ha[s] standing[,]" *TransUnion*, 2021 WL 2599472, at *6, and that his claim is ripe, *see, e.g., Portland Pipe Line Corp. v. City of South Portland*, 164 F. Supp. 3d 157, 174 (D. Me. 2016).

"The first and foremost concern in standing analysis is the requirement that the plaintiff establish an injury in fact," which "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Reddy*, 845 F.3d at 500 (citations and internal punctuation omitted). "Much as standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced that ripeness doctrine seeks

7

to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*. (citation and internal quotation marks omitted). "An allegation of future injury satisfies" the ripeness requirement "only if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1052-53 (1st Cir. 2021) (citation and internal quotation marks omitted). *See also, e.g.*, *Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 155 (D. Me.), *aff'd,* 922 F.3d 41 (1st Cir. 2019) ("Ripeness analysis aims to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (citation and internal quotation marks omitted).

At bottom, "premature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort." *City of Fall River, Mass. v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007) (citation and internal quotation marks omitted). That is the case here: the plaintiff fails to carry his burden of demonstrating the existence of a justiciable controversy.

The plaintiff alleges that Longstaff sent him a letter dated February 1, 2021, a copy of which is appended to his complaint, requesting his permission to come to his property to discuss several complaints of unpermitted land use activities. *See* Complaint ¶ 22[a]; Exh. 6. The plaintiff then sent Longstaff a letter, on which he copied the Town of Scarborough's attorney, asserting that the complaints at issue, lodged by neighbors with criminal records and a possible criminal motive, might not supply probable cause for a warrant. *See* Complaint ¶ 23[a]. He also sought clarification concerning any code violations he may have unknowingly committed, *see id*., which he alleges was not forthcoming, *see id*. ¶¶ 25(d), 27(a).

8

There the trail runs cold. Nothing in the instant complaint, filed on March 29, 2021, indicates that Longstaff ever came to the plaintiff's home without his permission or a warrant, ever threatened to do so, or bore an animus against him that might predispose him to do so. Indeed, Longstaff's letter, appended to the Complaint, expressly seeks the plaintiff's permission to visit his property. *See* Exh. 6. While the plaintiff alleges that (i) a Scarborough patrol officer (Anastasoff) trespassed on his property in response to one of the neighbors' false reports, *see id.* ¶ 12, (ii) a former Scarborough police officer (Chamberlain) confronted him on his property and attempted to bully him into selling his land, *see id.* ¶¶ 14-15, and (iii) Scarborough police cruisers have recently followed him on several occasions "for no apparent reason[,]" *id.* ¶ 16, it is too great a stretch to infer from those allegations that Longstaff, the Town's Zoning Administrator, colluded with those individuals or otherwise bore an animus toward the plaintiff that would render the likelihood of the complained-of harm more concrete.[5]

Because the injury for which the plaintiff seeks redress "has not yet happened" and is not "sufficiently likely to happen to warrant judicial review[,]" *Smith*, 376 F. Supp. 3d at 155 (citation and internal quotation marks omitted), his complaint must be dismissed.

---

[5] The plaintiff also alleges that (i) he would suffer potentially substantial damages if "a premature and warrantless inspection of his posted property" were "conducted by a hostile code enforcement officer with an improper motive[,]" Complaint ¶ 23[b](A), (ii) the denial of the requested relief would permit Longstaff "to further harass" him, *id.* ¶ 26(b), (iii) he "intends to have a non-hostile, and perhaps more objectively reasonable, code enforcement officer from a neighboring town be present" when Longstaff inspects his property, *id.*, and (iv) the grant of the requested injunction would remind Longstaff, who has "arbitrarily decid[ed] when, where and against whom he chooses to inspect, . . . an approach which has historically placed other Scarborough property owners in abject fear of his disdain and subjective enforcement[,]" that "the unfortunate ambiguity in many of Scarborough's municipal codes is not a generalized opportunity to selectively harass members of the tax paying community whom he personally dislikes[,]" *id.* ¶ 29. However, these are the kinds of "bald assertions" and "empty conclusions" that fall short of carrying a plaintiff's burden to state a claim or demonstrate the court's jurisdiction to hear a case. *Guilfoile*, 913 F.3d at 186 (citation and internal quotation marks omitted).

## IV. Conclusion

For the foregoing reasons, I recommend that the court **DISMISS** the plaintiff's complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to demonstrate a sufficiently concrete injury to implicate this court's power to adjudicate his case.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of July, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge